UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 4:21CR00202 SRC |
| | ) | |
| | ) | |
| GLENDA SEIM, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1.   PARTIES:

The parties are the defendant, GLENDA SEIM, represented by defense counsel, Lucille G. Liggett, Esq., and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.   This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.   The Court is neither a party to nor bound by this agreement.

## 2.   GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 2 and 4, the United States agrees that it will move for the dismissal of Counts 1 and 3 as to the defendant at the time of sentencing.   The government further agrees that no further federal prosecution will be brought in this District relative to the defendant's facilitation of the transfer of money from individuals, financial institutions, and various

state governments to perpetrators of romance fraud and unemployment insurance fraud schemes between August 16, 2015 and February 23, 2021, of which the Government is aware at this time. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a) as long as notice of any such request be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

## 3.   ELEMENTS:

As to Counts 2 and 4, the defendant admits to knowingly violating Title 18, United States Code, Section 1028(a)(7), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*First*, that the defendant knowingly transferred or possessed, without lawful authority, a means of identification of another person;

*Second*, that the defendant knew that the means of identification the defendant transferred or or used belonged to another person;

*Third*, that the defendant transferred or possessed the means of identification without lawful authority;

*Fourth*, that the defendant knew that she transferred or possessed the means of identification without lawful authority; and

*Fifth*, that the defendant transferred or possessed the means of identification with

2

the intent to commit, and in connection to the crimes of: mail fraud and theft of government property.

## 4.   FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Defendant agrees admits that sometime in 2014, she began an online relationship with an individual who claimed to be a United States citizen with business interests in Nigeria. Throughout the years, Defendant's purported romantic interest would ask for her financial assistance with various business endeavors. He also claimed that his Nigerian business associates and representatives of the Nigerian government were preventing him from leaving the country unless he paid certain fees, taxes, or penalties.

Despite having never met her romantic interest in person or communicated with him in any form other than texting, Defendant began sending him money from her Social Security retirement benefits and pension. Because Defendant lived on a fixed income and in subsidized housing, her romantic interest began having electronic equipment mailed to her residence. Defendant would convert the electronics to cash by pawning them, and then transfer the funds to her romantic interest. He stopped having the electronics sent to her after complaining that the amount of money Defendant obtained from the pawn shops was too small.

Defendant further agrees and admits that, in June 2014, Defendant began receiving MoneyGram wire transfers totaling more than $8,400 from L.G., A.M.B., and A.D.B. She did not know either of the three senders. Defendant further agrees and admits that she kept a small

percentage of the funds for her benefit and to pay wire transfer fees before she sent the balance to two other individuals in Nigeria through Money Gram. Neither of their names matched that of her romantic interest. In August, representatives from MoneyGram alerted Defendant that she would be unable to use their services any longer because the money she was receiving and sending was part of a fraudulent scheme. Defendant further agrees and admits that she deliberately ignored their information in order to continue the relationship with her romantic interest.

Less than six months after MoneyGram's warning, Defendant's romantic interest persuaded her to open federally insured financial accounts with a claim that he needed her help with his business endeavors. As a result, Defendant agrees and admits that in August 2015, she deposited a counterfeit check in the amount of $45,538.00 into her bank account. The check had been sent to her by her romantic interest. Defendant was unable to withdraw funds from the account, and her account was closed after the bank representatives advised her that she was involved in fraudulent activity.

Defendant agrees and admits that multiple personal bank accounts that she had opened at a variety of federally insured financial institutions in order to facilitate her transfer of funds for her purported romantic interest were closed under similar circumstances. Defendant further agrees and admits that she sought to protect her romantic interest by identifying him by false names when she was interviewed by bank representatives and local law enforcement officials. Despite the repeated advice and warnings of bank representatives and law enforcement agents, as well as the impact to her credit history, Defendant deliberately ignored the warnings and continued to believe the false information provided by her romantic interest.

Further, Defendant agrees and admits that her romantic interest convinced her to register

4

herself as the sole owner of a property investment business with the Missouri Secretary of State and obtain an employer identification number from the Internal Revenue Service. Following his additional instructions without question, Defendant used the registration paperwork and the employer identification number to open business accounts at various federally insured financial institutions. Because she gave him the bank account information, he was able to electronically deposit funds he obtained through romance fraud schemes, business compromise schemes, unemployment insurance benefit scams, and other fraudulent activity into Defendant's business accounts. Defendant agrees and admits that she conducted financial transactions with the proceeds of the fraudulent schemes.

Despite receiving independent warnings by special agents from the United States Secret Service and the Federal Bureau of Investigation and promising to stop participating in the fraudulent activities, Defendant agrees and admits that when the agents returned to her residence on February 23, 2021, she was in possession of a letter mailed to her address by KeyBank on behalf of the State of Indiana to R.D. and two letters mailed to her residence by Bank of America on behalf of the State of Arizona to C.S. and B.H., respectively. Defendant further agrees and admits that the three letters contained unemployment insurance benefits debit cards in the names of R.D., B.H., and C.S. Defendant further agrees and admits that she followed the instructions of her romantic interest and texted images of the front and back of the cards to him.

Defendant further agrees and admits that she should have known that R.D., B.H., and C.S. were real people and that her romantic interest was involving her in another fraudulent scheme because she had been placed on notice of her involvement in a similar scheme in May 2020 by representatives of Patriot Bank, the St. Louis County Police Department, and the United States

Secret Service. At that time, her romantic interest arranged for three ACH deposits on behalf of V.M., M.B., and S.T. to be deposited into her bank account. Defendant agrees and admits that the law enforcement officers advised her that the ACH deposits represented State of Washington unemployment insurance benefits totaling more than $15,000. Defendant agrees and admits that she intended to send more than $13,000 of the $15,000 in illegal proceeds by Federal Express to Nigeria in order to secure a United States citizen's release from Nigeria. A stimulus payment from the Internal Revenue Service in the amount of $7,456.00 that was intended for M.L. was also diverted into Defendant's Patriot Bank account.

While Defendant did not personally receive the majority of the money her romantic partner fraudulently obtained, or attempted to obtain, she agrees and admits that between August 1, 2014 and February 23, 2021 her participation in his fraudulent schemes caused intended losses between $550,000 and $1,500,000. Defendant further agrees and admits that the intended losses include a $100,000 check which represented a substantial portion of a romance fraud victim's retirement account of a romance fraud victim.

Defendant further agrees and admits that in order to please her romantic interest she took deliberate action to avoid confirming information from MoneyGram, First Bank, Neighbors Credit Union, Scott Credit Union, Patriot Credit Union, Regions Bank, West Community Credit Union, the Kirkwood, Missouri Police Department, the St. Louis County, Missouri Police Department, the United States Secret Service, and the Federal Bureau of Investigation that he was using Defendant to perpetrate various schemes. In addition to the individual victims discussed herein, Defendant also agrees and admits that the following financial institutions and entities were among those that experienced a financial loss as a result of her participation in the fraudulent scheme: Academy

Bank; Bank of America; and J. Kendell Autos.

## 5.   STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime of identity theft to which the defendant is pleading guilty in Count 2 and 4 is imprisonment of not more than 15 years, a fine of not more than $250,000.00, or both.   The Court may also impose a period of supervised release of not more than 3 years.

## 6.   U.S. SENTENCING GUIDELINES 2018 MANUAL:

The defendant understands that Count 2 and 4 are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a.   Chapter 2 Offense Conduct:

**(1)   Base Offense Level:**   The parties agree that the base offense level is **6** as found in Section 2B1.1(a)(2).

**(2)   Chapter 2 Specific Offense Characteristics**:   The parties submit that the following specific offense characteristics apply: ***14 levels*** should be added pursuant to Section 2B1.1(b)(1)(H) because the loss resulting from the offense was more than $550,000 but less than $1,500,000; ***2 levels*** should be added pursuant to Section 2B1.1(b)(2)(A)(i) or (iii) because the offense involved 10 or more victims or resulted in substantial financial hardship to one or more victims; and ***2 levels*** should be added pursuant to Section 2B1.1(b)(11)(B)(i) because the offense involved the production of an unauthorized access device.

**b.    Chapter 3 Adjustments:**

**Acceptance of Responsibility**:    The parties recommend that *3 levels* should be deducted pursuant to Sections 3E1.1(a) and (b) because the defendant has clearly demonstrated acceptance of responsibility and manifested a timely notification of intent to plead guilty.   The parties agree that the defendant's eligibility for this deduction is based upon information presently known.   If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c.   Estimated Total Offense Level:**   The parties estimate that the Total Offense Level is 21.

**d.    Criminal History:**    The determination of the defendant's Criminal History Category shall be left to the Court.   Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e.   Effect of Parties' U.S. Sentencing Guidelines Analysis:**   The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.    The parties may not have foreseen all applicable Guidelines.   The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7.   WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a.   Appeal:**   The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1)   **Non-Sentencing Issues:**   The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to motions, discovery, and the guilty plea.

(2)   **Sentencing Issues:**   In the event the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or below the corresponding range, then, as a part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History.   Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or above the corresponding range.

**b.   Habeas Corpus:**   The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c.   Right to Records:**   The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the

Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.   OTHER:**

 **a.   Disclosures Required by the United States Probation Office:**   The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

 **b.   Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**   Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

 **c.   Supervised Release:**   Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   As a special condition of supervised release, defendant agrees not to initiate any contact, direct or indirect, with victims of the offense or identified government witnesses. These conditions will be restrictions on the defendant to which the defendant will be required to adhere.   Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.   The defendant understands that parole has been abolished.

 **d.   Mandatory Special Assessment:**   Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 for each felony count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the

defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.   Possibility of Detention:**   The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.   Fines, Restitution and Costs of Incarceration and Supervision:**   The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.   The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.   The precise amount of restitution is unknown at the present time.   Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c).   Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss.   The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g.   Forfeiture:**   The defendant agrees to forfeit all of the defendant's interest in all items seized by law-enforcement officials during the course of their investigation including, but not limited to: currency or any personal property.   The defendant admits that all United States currency, property and assets seized by law enforcement officials during their investigation constitute the proceeds of the defendant's illegal activity, were commingled with illegal proceeds or were used to facilitate the illegal activity.   The defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the government and to rebut the claims of nominees and/or alleged third party owners.   The defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.    ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**    In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.   The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.   The defendant's counsel has explained these rights and the consequences of the waiver of these rights.   The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel.   The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.   Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10.   VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.   In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.   The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.   CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.   The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12.   NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

10/14/2021
_____
Date

_____
TRACY L. BERRY 014753 TN
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

10-01-2021
_____
Date

_____
GLENDA SEIM
Defendant

10/1/2021
_____
Date

_____
LUCILLE G. LIGGETT        MO BAR #34589
Attorney for Defendant

14